And you may proceed. Thank you, Your Honor. May it please the Court, esteemed counsel. Before I get started, I just wanted to say that we heard that one of the parties in this case, Mr. Buse, passed away in the last day or two. And I wanted to tell his family and counsel how sorry I am to have heard that. What we're asking for today, Your Honors, is that this case, that the bankruptcy court's decision be overturned by this court and remanded with an order for the reinstatement of WVSV's state court complaint. As part of that order, we're also asking that the bankruptcy court be ordered to send the case back to state court for a decision on the merits, to allow the case to proceed through the proper channels of litigation. With the reversal, we believe that the attorney's fees would automatically get reversed. But in the briefs as well, we talk about on the attorney's fees. Well, there's two separate issues. Of course, Judge. The first is the jurisdictional issue and then the merits. Why wouldn't the bankruptcy court, the bankruptcy court didn't purport to assert jurisdiction over sort of the state law elements merits. Correct. But just, is it precluded by the plan? Now, why wouldn't the bankruptcy court have jurisdiction to decide whether it's precluded by the plan? The bankruptcy court had jurisdiction to determine if it was precluded by the plan. But the decision of the bankruptcy court that it was precluded by the plan and should be dismissed is the improper decision. But that's merits. That's not, that goes to the second issue. So are you conceding that there is jurisdiction to decide whether or not the plan is preclusive of the claim? Right. The bankruptcy court, what they did is after, because the bankruptcy court said, this is a state court claim. I can't make any decisions. I don't have jurisdiction. The court says that. But what the court does is has to make a determination, is it precluded by the plan? And the judge decides that it is because of the different saying it wasn't disclosed, for instance. Or that it was a pre-petition claim. So those findings were incorrect. This was a wrongful institution of civil proceedings claim, which is the only claim we have left at this time, Judge. Because the declaratory judgment claim ended up working itself out, as you can tell. Okay. So this was a claim that arose post-confirmation. This is a claim that WVSV, I'm sorry about all the initials in the case. But WVSV could not have known about until it's. Well, could not have known about as different could have brought. I think most people who are going through what they think is malicious prosecution.  And then even if the accrual law says they don't get to bring it until the suit is over. And so that raises a question. Is it sufficiently rooted in the Siegel test? Yes. Is it sufficiently rooted so that even though it doesn't accrue until post-confirmation, it should have been alerted to the bankruptcy court? Sure. So it wasn't. There was just not enough information at the time of the confirmation plan to be able to say in 2019, after Judge Anderson, who is the state court judge, says that the declaratory judgment claim was not a valid claim by 10K, then WVSV is going to go ahead and bring a malicious prosecution claim. And feeling put upon by litigation is a lot different than malicious prosecution. So what I am, and I don't want to put words in anyone's mouth, but what 10K appears to be arguing is that we were totally blindsided, totally put upon. We never knew this complaint was coming. But there was language in the confirmation plans that said that WVSV preserved any and all rights. They preserved any claims for any supplemental or related proceedings brought by any of the foregoing. This was all set forth. But do you fit within the four corners of that language? Sure, of course. How so? Because it was claims that have or may be raised in the state court litigation, but wasn't the state court litigation defined as all matters currently pending? Did you bring a whole new action, or did you file this in an existing action? It was a whole new action with a whole new case number in the state court, but because it's a wrongful institution of civil proceedings, based on what happened in the state court proceedings in the 2003 case. But that doesn't seem to fit within the four corners of the reservation in the bank. If you take it literally. Well, that's what 10-K argues, but Your Honor, I would ask if you look at the language, that it's more broad than that. And in fact, one of the things that 10-K says is there's this language that has this. Can you point to me where in the definition of state court litigation you fit? If you're looking at the capitalized term of state court litigation, it refers specifically to that 2003 case. But there's more. But you're not in the 2003 case. No. You're about the 2003 case. Right. And that says, seems to say, in. So there's, but there's more language. It also talks about any supplemental or related proceedings that WVSV may file. So it's broader than that. There is a definition, a capitalized definition for state court litigation, but the language in the confirmed plan is broader than that when it talks about the any and all claims that WVSV may bring against 10-K. So that language would anticipate if there were any claims that didn't have to happen specifically in that 2003 litigation. And in fact, the wrongful institution of civil proceeding claim could not happen within that 2003 litigation. And I know 10-K says, well, we were blindsided. Any and all language is just way too broad. In 10-K's arguments regarding attorney's fees, they cite a case, and this is different, but as I was doing my review over the last couple of months, something that just kind of stuck out to me, where they were saying that any equals all in an attorney's fees case that they cite in their briefing. So is any and all so broad you don't know, or does any and all encompass what's going to happen? And this is not something in a bubble. This is not 10-K is just out of the blue, doesn't know what's going on. They're engrossed in litigation with WVSV, and I think that if you take 10-K's position, their position appears to be, well, we could kind of do whatever we wanted to in the 2003 litigation, include committing a tort, and there won't be any remedy towards it because WVSV, like, specifically didn't say, once this is all over and once Judge Anderson makes this decision, which of course is going in the future and trying to predict, once that happens, then a wrongful institution of civil proceedings may be filed. I mean, I understand your argument about, you know, being, with respect to the preservation of claims, but tell me why it's not sufficiently rooted in the pre-bankruptcy past for purposes of Siegel. I mean, isn't this the kind of thing the bankruptcy court would have liked to have known was coming? When you say the kind of thing, do you mean the wrongful institution claim, or? Well, that's the only claim at issue. Yes, that's the only claim at issue. And so why isn't that sufficiently, even though it doesn't accrue until later, why isn't it sufficiently rooted in the pre-bankruptcy past so that even though it's a contingency and can't actually be filed until after the litigation is over, why isn't it under Siegel part of the bankruptcy estate? Well, not only do you— It should have been told to the bankruptcy court. Well, not—I don't think you—I don't think there's any scenario except a time machine and going to 2019 and reading Judge Anderson's decision so you know exactly what your claims are, to be able to do that. And I think that's why there was the language in the confirmation plan where it has WVSV reserving the ability to file any and all claims against 10K and its members. I think that language is very important. Again, 10K kind of argues it's so broad we don't know what it is. But at this time in 2013 and 2014, when the—because the 2003 litigation gets dismissed for a while. It has this whole protracted history. So it kind of goes away but then gets reinstated. And so now we have this bankruptcy in 2013 and 2014, and that's when the litigation kind of starts up again. And how in the world is anyone going to be able to say six or seven years down the road there's going to be this wrongful institution of civil proceedings claim? But as I said, you know, with malpractice claims, with malicious prosecution claims, they generally can't be filed until the underlying litigation is over. Right. But it is often well known during the course of the litigation that there is risk. In a malpractice case, the lawyers probably told the carrier about the problem, even though the suit wouldn't come until later. And if you're being maliciously prosecuted, you're often well aware that when this is over, you know, there'll be payback. And so why isn't that sufficiently rooted in the pre-bankruptcy past that even though it's subject to a contingency, you have to tell the bankruptcy court that this is a claim that you have, that when it comes, you'll file so that the bankruptcy court can take it into account and not have it held in reserve that you then play this card later? Well, I don't think that's the case in this case, Your Honor. Because this is so factually specific, and especially when you're talking about like judicial estoppel cases, and I know I'm kind of jumping around a little bit, but those are like very factual specific. And I think this case is as well, where you have the 2013-2014 confirmation plans, which is around the same time that the litigation between 10K and WVSV starts getting ramped up again. So you put in the language that tells you that you have enough information. We're going to reserve any and all claims that we have against 10Ks and its members. So it is not sufficiently rooted in the past because it doesn't accrue until that time. May I reserve my other two minutes, or are there other questions that I can answer? Absolutely, you can. Okay. Thank you, Your Honors. Good morning, and may it please the Court, Dan Dowd on behalf of Appley and Cross-Appellant 10K LLC, with me is my colleague, Rebecca Van Doren. Your Honor, I know I have 12 minutes. I was going to reserve about a minute for rebuttal on the Cross-Appeal. I'm not sure if that's permitted. Sure, that's fine. We can do that. Thank you. Your Honors, the Bankruptcy Court correctly ruled that WVSV's undisclosed claim was property of the estate, that by virtue of that nondisclosure, it was judicially estopped from pursuing the claim post-confirmation, and that Judge Wansley indeed had jurisdiction in interpreting and enforcing the plan to make the ruling to dismiss the claims. The Bankruptcy Court also properly found that the action arose out of contract and that attorneys' fees were warranted. Which is the best case for the proposition that a claim that does not accrue until after the confirmation of the plan can be deemed to be property of the estate? I think the best support is the bankruptcy code itself, and I will answer your question. But you don't have a case. I do have a case. I think that the Hamilton case, the Sierra switchboard case, the Ninth Circuit case that said causes of action are property of the estate and in re-touch American Holdings, which is not a, it's a case that was a disallowance action. But in that case, the court said a claim is contingent where it has not yet accrued and is dependent upon some future event that may never happen. And a contingent claim is a claim under Section 101 of the Bankruptcy Code which makes it property of the estate. As the district court ruled here. What definition are you, because that definition in 101 doesn't plug into 541, which is the relevant, isn't 541 the relevant provision here? I think you read them both together, Your Honor. But the word is, the word defined that you just referred to in 101 is not used in 541, is it? Correct. Well, it says that, I think. Because that's claim and the word in 541 is property. Right. And how do you have a property right in something that doesn't even come into existence until after the confirmation of the plan? Well, I think for the same reason the question that you asked my colleague, which is, is it rooted in the pre-bankruptcy past? But oftentimes we address that issue because really the time is supposed to be at the time of bankruptcy. And so usually we get into this with issues between the filing and the confirmation. Here you want to go further and go after the confirmation. And so I'm asking you, what authority takes us past confirmation? I understand how you get past petition, but how are you getting past confirmation and what's your best case that says we could do that? Well, Colby Pulley is a malicious prosecution case that said that it was property of the estate because the maliciously filed action, the allegedly maliciously filed action was filed prior to the petition even though it wasn't dismissed until after the petition was filed. That is our situation. Was it a post-confirmation case? I believe it was, Your Honor. And the conduct that allowed the malicious prosecution claim to accrue, which is very different than whether it's property of the estate, occurred post-filing of the bankruptcy. And I believe it was also post-confirmation. But if all of the cases say that the key inquiry is whether the claims and the rights are sufficiently rooted in the pre-bankruptcy past, and we do know that property of the estate can include causes of action, and we do know from the complaint here it resolves any question at all about whether this wrongful institution claim is rooted in the pre-bankruptcy past. If you look at the complaint, it says that WVSV was harmed since the day it closed on the Braycliffe Agreement in 2003. That's nine years before the petition was filed. That's the day it was harmed. It says that the harm was substantial and continued for 16 years. They allege that the harm impacted the Sun Valley property, which itself was property of the estate. And all damages asserted stem from the only asset that WVSV disclosed and brought into the bankruptcy estate, which was the Sun Valley property. And more importantly, Your Honor, they claim, and they allege, that the harm was caused by 10K's, quote, false, fabricated, malicious, and wrongful declaratory judgment action. That action was filed. I filed it in May of 2003. Yet when they filed their bankruptcy case in 2012, there is no disclosure at all that they believe they have either a contingent, an unliquidated, a disputed, or an unmatured cause of action for wrongful institution. And not a run-of-the-mill one, a $300 million claim. So the bottom line, if we look at what the courts in the cases look at in deciding whether something is property of the estate, is everything about this claim, everything was rooted in the pre-bankruptcy pass of WVSV. And WVSV has ignored that in the bankruptcy court, in the district court, and in their briefings in this case. They run from the allegations in their complaint, which cook them on whether this is property of the estate that should have been disclosed in the bankruptcy. As a result of the nondisclosure of property of the estate, WVSV is judicially stopped from now pursuing the action post-confirmation. The law in this area is undisputed in the bankruptcy context, that if a debtor omits a cause of action from its bankruptcy schedules and obtains a discharge or planned confirmation, judicial estoppel bars later pursuit of the action. The rationale is the integrity of the bankruptcy system itself, which depends for its viability on the truthful and honest disclosure by a debtor of all property so creditors in the court can make educated decisions on how to process the bankruptcy. Here is what we know. WVSV never disclosed their $300 million claim in their schedules, even though schedule B, number 21, required the disclosure of all contingent and unliquidated claims of every nature. The answer given was none. In question 35, WVSV was obligated to disclose other personal property of any kind. The answer was none. It wasn't disclosed in the disclosure statements. It wasn't disclosed in the proposed plan. It wasn't disclosed in the bankruptcy trial. And worse than nondisclosure, we have an affirmative representation by their answer of none that there are no unliquidated claims against 10K that exist and that are part of the bankruptcy estate. WVSV clearly knew how to disclose unliquidated claims because they did so with respect to a condemnation action, and they also, in their disclosure statement, with respect to their unconfirmed plan of reorganization, disclosed a contingent counterrestitution claim against 10K. No mention of a wrongful institution claim seeking damages of upward of $300 million. And they never disclosed why. They never say why we didn't put that claim, which we said accrued in 2003, in our schedules in 2012 and our disclosures in 2013 or in the bankruptcy trial in 2014. If we look at the elements of judicial estoppel, they are three, and they are met clearly here. First, by bringing claims post-confirmation, WVSV acted in a manner that was clearly inconsistent with its pre-confirmation position that it had no such claim. Second, the bankruptcy court accepted and relied on WVSV's pre-confirmation position by confirming a plan that left out of it any mention of this contingent claim. And lastly, and perhaps most importantly to the analysis of judicial estoppel, is that 10K, the creditor, relied to its detriment on the nondisclosure of the claim. 10K evaluated the actual disclosure, which said nothing about this claim. It determined its bankruptcy strategy based on what was disclosed. It proposed a confirmation plan. What would have changed had it been on the schedule? A lot would have changed, Your Honor. 10K never would have settled. And remember that the plan that was confirmed here was authored by 10K as a result of the settlement during the middle of the bankruptcy trial. And that settlement agreement and that confirmation plan, the stipulated ones, never would have included the resolution that it did that left 10K hanging out on a $300 million contingent claim. Everything would have changed. 10K never would have settled on the terms that it did if it knew that it would be in this situation in January of 2020 when it was served with a $300 million lawsuit based on pre-petition conduct. All of that would have been factored in. We may not have gotten to a stipulated plan of reorganization. We may have gone back to trial. The settlement agreement may have been much different. It may have said, hey, bankruptcy court, hold on to this Sun Valley property until everything's resolved. Not just the information that's been disclosed, but when that trial's over, let's see how the dust settles. And if there are any claims that emanate out of that, we'll go get those resolved, either in the bankruptcy court or in the state court. But this asset, 13,000 acres of raw land in West Phoenix, just hold on to that. None of that was provided for in the plan because 10K didn't know it was going to be on the receiving end of this claim in 2020. And we entered the settlement agreement and the confirmation plan in 2014. So what the courts look at is whether someone's playing fast and loose with the bankruptcy rules in connection with representations made during the course of the bankruptcy. To not disclose a contingent claim for $300 million and allow it to be dealt with by all of the creditors and the bankruptcy court, but instead to pursue it for itself after the confirmation has been entered, is the essence of playing fast and loose with the bankruptcy rules. I believe that Ms. Brummer has stipulated that the bankruptcy court has jurisdiction in connection with implementing the plan to reach these issues. She disagrees with the outcome, but I don't think jurisdiction is being debated. I'm happy to answer any questions about Judge Wansley's jurisdiction to determine whether these claims could proceed. And in that, I'll spend 20 seconds on attorney's fees on the cross-appeal. If this court affirms the dismissal of the claims, it should reinstate the bankruptcy court's fee award. Arizona's statute, which is unique, is interpreted broadly in terms of what types of claims fall within the arising out-of-contract language. And in this case, again, all you have to do is look at the complaint to see that the essential basis of every claim that was asserted in that complaint centers around contracts. The Braycliffe Agreement and the Junior Trust Agreement. The declaratory judgment claims sought to rewrite the agreements. The wrongful institution claim alleged that 10K had contractual obligations that had been breached. And in order to resolve the wrongful institution claim, which the damages were based on the benefit of the bargain analysis, the court would have to review and understand that agreement. And in order to determine whether the prosecution of that claim was malicious, the court would have to understand whether there was probable cause under the 2002 Braycliffe Agreement for 10K to file a declaratory action to overturn it. So, Your Honors, we would ask that the dismissals be affirmed and the bankruptcy court's fee award be reinstated. I have five seconds for rebuttal. Thank you. That was well done. Thank you, Counsel. All right. Actually, before you stand up, Counsel, we have the gentleman on the screen. No, no. It gets confusing sometimes in these cases. Counsel, on the screen, can you hear us? Yes, Your Honor. Can you hear me? We can. And you have three minutes. Yeah. Well, I was just going to say I would be glad to cede over whatever time to Mr. Dowd. Basically, my argument is the same as his pretty much that I just heard. I just would say very quickly a couple of quick things and I'll stop. Reserving claims in generic form is not the same as getting specific notice. And I agree with Mr. Dowd that had such specific notice been provided of a claim that clearly could have been potentially contemplated into the future based on the facts that existed at the time, that things could have been a lot different in terms of whether the settlement or the plan were confirmed. So my only point is that everyone here relied on this. The members relied on being included in this settlement and plan as well. And Judge Tucci found that the language contemplated that. Everybody understood that. And this is a claim that is not part of the state court litigation. It is a claim that arose after the state court litigation and clearly, simply put, was not contemplated to be a claim that would survive. It's as simple as that. And I really have nothing further to add to what Mr. Dowd said. All right, then. If you can stop the clock. So, Mr. Dowd, you do actually technically have a minute 40 for rebuttal as to the attorney's fees. So you're limited to that issue. All right. Now you may proceed. Now I can jump up. Thank you very much. Just a few quick points in my last few seconds. Cole v. Pulley is not binding on this court. It's a Massachusetts case. And the language regarding wrongful institution, which I believe they use malicious prosecution, I think it is set in dicta. Can you tell from Cole whether it was post-confirmation or pre-confirmation? Because I couldn't. From Cole, it was, I believe it was pre, if I remember correctly, from my outline. 10K appears to argue that the language, the reserving claims language, that is cited throughout both briefs has zero meaning. One thing that 10K has never said is, what does this language mean? It says any and all, but it doesn't mean anything. And what would 10K have done different? They wouldn't have committed a tort. They would have been put on notice, don't commit a tort. They should just know that. And regarding the attorney's fees, I know you are not bound by the district court judgment, but we would ask that you find along the lines of the district court judge, found and reverse the bankruptcy court's attorney's fees. And that's all I have unless there's any other questions. Okay. Thank you, Mr. Dowd. Again, I'm going to, you have the time, but you've got to stick to the script here on this one. Not a freewheeling rebuttal. And I apologize, Judge Collins, I just don't have the answer to your question at hand. But I will stick to fees. I mean, why is the particular litigation that the fees were awarded for arising out of a contract? It seems sort of satellite to the contract. Your Honor, so the way this has been interpreted under Arizona law, and there's been a lot of expressions, but it looks at whether the dispute could exist but for the existence of the contracts. In here, the two contracts, the Junior Trust Agreement and the Braycliffe Agreement, on the declaratory judgment claim, which seeks as a remedy to reform the Junior Trust, of course it could not exist but for the existence of the Junior Trust Agreement. Arizona courts have interpreted that as meaning that claim arises out of contract. It is clear under Arizona law that you do not have to have a case that involves an allegation of breach of a contract. What's the particular claim for which the fees were awarded here? I believe that they were awarded for all of the claims. And while the only claim left for purposes of the other piece of this argument is wrongful institution, for purposes of attorney's fees, we have to look at all of the claims, which were two declaratory judgment claims, a wrongful institution claim, and a slander of title claim. On the wrongful institution claim, the only way to sort through and see whether 10K filed an action without an objective basis or with malice is to look at the essence of that action, which is what did the Junior Trust and the 2002 Braycliffe Agreement provide for. But are the fees, so you get fees for a malicious prosecution claim based on a contract action that you lost? No. We get fees on the malicious prosecution action because the essential basis of that action was the interpretation of a contract. But the underlying, you didn't get the Braycliffe Agreement wasn't set aside. You lost. That was why they brought the malicious prosecution claim. Exactly. And that's why Arizona law holds. We don't have to show a breach of a contract to prove a claim arises under contract. What we have to show is that when you look at the claim, whether it be a tort, a declaratory judgment claim, or a contract claim, is the essential basis of the adjudication of that claim reliant on a contract. And here, in this malicious prosecuting case, you can't resolve that case unless you study the contract that we sued to invalidate that is the basis of the malicious prosecution case. Thank you, Your Honors. All right. Thank you all for your briefing and argument in this case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS